## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN JEFFREY HOWITT, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHITESTONE HOME FURNISHINGS, LLC, d/b/a SAATVA, 1902 Whitestone Expy, Ste 201, Whitestone, NY 11357,<br><br>Defendant. | Civil Action No. 1:25-cv-2874<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Steven Jeffrey Howitt ("Plaintiff"), on behalf of himself and all others similarly situated, by his undersigned counsel, alleges the following against Defendant Whitestone Home Furnishings, LLC d/b/a Saatva ("Saatva" or "Defendant"), upon personal knowledge as to his own acts and upon information and belief, based upon the investigation of his counsel, as to all other allegations:

### Introduction

1.      Plaintiff brings this class action complaint ("Complaint") on behalf of himself and all other persons in the United States who purchased a Saatva adult mattress or baby crib mattress within the relevant statute of limitations period (the "Relevant Period").

2.      This action arises from Saatva's "greenwashing" or its dissemination of materially false and deceptive advertising in which it exaggerates and in some cases, makes false claims about the environmental benefits of its products, the materials that it uses and certain of the certifications that it has purportedly obtained for its products.

1

3.      Greenwashing is a marketing practice in which an entity publicly misrepresents or exaggerates the positive environmental impact or attributes of a product. It has arisen as a response by manufacturers and retailers to the growing number of American consumers who want to buy environmentally friendly or green products, as a means to sell more product and thereby increase profits.  16 C.F.R. §260.1.

4.      The Federal Trade Commission has specifically promulgated "guidance" respecting greenwashing claims, in order the prevent marketers from making environmental marketing claims that are unfair and deceptive under Section 5 of the FTC Act, 15 U.S.C.§45. 16 C.F.R. §260.1, *et seq*.

5.      In that Green Guide, the FTC warns that manufacturers and retailers should "not overstate, directly or by implication, an environmental attribute or benefit."  Section 260.3(c). Moreover, the Green Guide states that "[i]t is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a general environmental benefit", that "[u]nqualified general environmental benefit claims are difficult to interpret and likely convey a wide range of meanings", and that "[i]n many cases, such claims likely convey that the product, package, or service has specific and far-reaching environmental benefits and may convey that the item or service has no negative environmental impact."  Section 260.4 (a)-(b). This is particularly problematic because "it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, and therefore "should not make unqualified general environmental benefit claims."  Section 260.4 (b).   That is precisely the instance here.

6.      Saatva is a seller of adult, toddler, infant and pet mattresses, which it sells primarily through online advertising and its website. It is the largest online seller of luxury mattresses in the United States, although it also maintains a limited number of brick-and-mortar showrooms in major cities throughout the United States.

2

7.    Saatva's primary selling point is that its mattresses are not only luxurious while affordable, but are "eco-friendly", and that the materials it uses are nontoxic and produced through a sustainable manufacturing process.  As Saatva states in its website, "[a]s a pioneer in the direct-to-consumer mattress industry, being 'green' isn't just a buzzword here at Saatva. It was built into our business model from day one." https://www.saatva.com/green-initiatives.

8.    Saatva's representations concerning the eco-friendly nature of its mattresses and the materials with which they are made, were specifically directed at convincing reasonable consumers that their mattresses have far reaching environmental benefits that are actually good for the environment and the planet—claims that it cannot substantiate.  In fact, Saatva specifically says that [a]ll of our mattresses are made with materials that are eco-friendly and nontoxic, meaning they're good for the planet *and* your health."   http//www.saatva.com/blog/saatva-supports-environment-earth-day/ (emphasis in original).

9.    Saatva further advertises that it uses eco-friendly foams that are certified by CertiPUR US, and that it uses other materials and processes, certified by other not for profit organizations in the sustainability industry such as the CradletoCradle Institute ("CradletoCradle").

10.    Saatva states in its hard copy brochure, for instance, that it uses "eco-friendly" materials, and "eco friendly foams" and that its crib mattress is handcrafted with "natural, nontoxic, eco-friendly materials", thereby providing parents with peace of mind.

11.    These representations are repeated in Saatva's online advertising, which states that "sustainability is at the heart of what" Saatva does, and that it is committed to bringing customers "sleep products that are good for the environment (and your health) by using eco-friendly, nontoxic materials and maintaining sustainable manufacturing processes."[1]

---

[1] *9 Ways Saatva Supports the Environment*, Saatva Editorial Team (November 7, 2022, updated August 16, 2024), http://www.saatva.com/blog/saatva-supports-environment-earth day/?.gl=1*vldk01_gcl_aw*R0NMLjE3ND14INTE0NjcuQ0wS0NRandoWVNfQmhem

12.    Saatva states in its "Green Initiatives" section of its website that it only "uses eco-friendly foams that substitute petroleum-based chemicals with 30% naturally derived soybean and corn oils", and that its CertiPur-US certified memory foams are "guaranteed to be free of toxic chemicals."

13.    In its website article entitled, *How Saatva Got its Name*[2], Saatva repeats that "[w]e use eco-friendly materials like . . . eco-friendly memory foam" and that its mattresses "will never off-gas in your home."  It further repeats this statement again in its discussion of its mattresses, such as the classic, stating that every Saatva mattress contains "eco-conscious materials", including "eco-conscious foams that are CertiPur-US certified to meet their rigorous standards for emissions, content and durability."[3]

14.    Saatva's website makes similar statements regarding the baby crib mattress, stating that it uses "eco-conscious materials" to make those mattresses, and that its materials are safe for humans and the environment.[4]  It further states that its baby crib mattresses, have been "tested for the presence of harmful substances."[5]

15.    Moreover, it touts certain certifications from non-profit entities in the sustainability arena, including CradletoCradle.

16.    These statements, however, are materially misleading and deceptive and were directed at giving the public the misleading impression that its mattresses were eco-friendly, sustainable, non-toxic, and were free from harmful substances, and that they were actually good for the environment,  when they were not.

---

[2] What Does Saatva Mean? See How Our Company Got Its Name | Saatva.
[3] Innerspring Mattress - Saatva Classic - Mattresses | Saatva.
[4] https://www.saatva.com/mattresses/crib-mattress?sku=6SAATORG&qty=1.
[5] *Id*.

17.   They were further directed at inducing Plaintiff and Class members to purchase Saatva mattresses at higher prices than they would have otherwise paid for non- eco-friendly mattresses or mattresses containing synthetic materials.

18.   Saatva's adult mattresses, for instance, consist of polyurethane foam, polyester, rayon and viscoelastic foam, which are synthetic and are not eco-friendly, and accordingly, it misleadingly overstates the environmentally friendly and toxic free nature of the materials contained in its mattresses.

19.   Saatva touts its adult mattresses as having been certified by various non-profit organizations such as CertiPUR-US, in order to support its claims that its mattresses are eco-friendly.  However, Saatva violates the advertising rules promulgated by CertiPUR-US that specifically prohibit manufacturers from advertising that their foam as "non-toxic" or "eco-friendly" even if certified by CertiPUR-US.[6]  Moreover, Saatva fails to disclose that CertiPUR-US is an entity initiated by the polyfoam manufacturers—the very entities to which it provides guidance and certifications.

20.   Similarly, its baby crib mattress is advertised as nontoxic, safe, natural and eco-friendly.  However, certain testing of the baby crib mattress recently disclosed that those mattresses contain per- and polyfluoroalkyl substances, otherwise known as PFASs or forever chemicals. PFASs are a group of synthetic chemicals that are extremely resistant to degradation, persist in the environment, bioaccumulate in blood and body tissues, and can be harmful to humans and the environment, even at very low levels. This is especially concerning because these mattresses are meant for babies and toddlers, who are particularly susceptible to these chemicals.

21.   Saatva also touts its baby crib mattress as having a CradletoCradle Certification as confirmation of its commitment to sustainable processes. However, the CradletoCradle

---

[6] Certipur.us/for-manufacturers-retailers/program-rules/*allowed-list.

5

Certification website does not name either Saatva or Whitestone Home Furnishings in its list of manufacturers or retailers included in its community of entities with that certification and does not have Saatva mattresses in its list of certified products. https://c2ccertified.org/our-community (last viewed May 20, 2025). In fact, articles have recommended that consumers reach out directly to the Saatva (and similar companies) to see and confirm whether they actually have this and other certifications. https://bettergoods.org/best-organic-crib-mattress/.

22.     In other words, Saatva's advertising misleadingly "greenwashes" or deceives reasonable, environmentally conscious and concerned consumers into believing that its mattresses are far more environmentally friendly, and less toxic than they actually are, and that they are in fact good for the environment.

23.     Plaintiff brings this Action on behalf of himself and others similarly situated, who purchased Saatva mattresses, based upon Saatva's deceptive and misleading statements concerning the eco-friendly, and non-toxic nature of its products. Plaintiff asserts the following claims against Saatva: (1) for consumer fraud pursuant to NY Gen. Bus. L. §§349-350; (2) unjust enrichment; (3) for Saatva's violation of its implied warranty with Plaintiff and the Class; and (4) for violations of Saatva's express warranty with Plaintiff and the Class.

## Parties

24.     Plaintiff, Steven Jeffrey Howitt, is a citizen of New York, and has been a citizen of New York at all times relevant herein. On or about August 4, 2024, Plaintiff purchased a Saatva adult classic mattress in Saatva's showroom in New York.

25.     At the time he purchased his Saatva classic queen-sized mattress, Plaintiff was unaware that his mattress contained toxic, non-eco-friendly materials, such as polyurethane foam, polyester, rayon and gel infused viscoelastic foam and did not become aware of that until the mattress containing a label was delivered to his home. Nothing in the sales material, either online

6

or in hard copy, made those disclosures. Had he known the true nature of the mattress purchased, and its chemical composition, he would not have purchased the Saatva mattress, much less paid a premium for that mattress.

26.     Rather, that section of the Saatva website discussing the classic mattress specifically indicates that it contains "[n]o fiberglass or toxic chemical flame retardants" and that Saatva "instead use[s] a natural, plant-based thistle pulp flame barrier" and that "[e]very Saatva mattress" including the classic that Plaintiff purchased, is made with "[e]co-conscious materials", including "[e]co-conscious foam". https://www.saatva.com/mattresses/saatva-classic.

27.     Plaintiff relied on these and other deceptive statements in making his purchase, at the price that he paid which was over $1,600 and more than most other mattresses.

28.     Defendant Whitestone Home Furnishings LLC, d/b/a Saatva, is incorporated in Delaware and maintains it principal place of business in Whitestone, New York, and is a citizen of Delaware and New York.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which: (a) the proposed class contains at least 100 members; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the proposed class is a citizen of a state different from that of Defendant (i.e., minimal diversity).

30.     The Court may exercise personal jurisdiction over Defendant because Defendant is a citizen of New York and maintains its principal place of business in New York, and facts giving rise to the cause of action asserted herein arose at least in part in New York.

31.     Venue is proper in this District under 28 U.S.C. §1391 because the Defendant maintains it principal place of business in this judicial district, transacts business in this judicial

district and a substantial part of the events and/or misrepresentations giving rise to the claims asserted herein occurred in this District.

<u>**FACTUAL ALLEGATIONS**</u>

***Saatva Makes Deceptive Representations about its Mattresses On Line and in its Hard Copy Brochure***

32.     Catering to the current consumer demand for eco-friendly products that prioritize environmental responsibility and sustainability, the linchpin of Saatva's advertising is its claim that its mattresses are "eco friendly", non-toxic, and natural, that its processes are consistent with tenants of sustainability, and that its mattresses are actually good for the environment and health.

19.     On its website, as seen in the image below, Saatva states that its mattresses contain "eco-friendly materials that are better for you and the planet."[7]



20.     In addition, Saatva warrants that it "only use[s] eco-friendly foams that substitute traditional petroleum-based chemicals with 30% naturally-derived soybean & corn oils."[8]

21.     In its online blog entitled, *9 Ways Saatva Supports the Environment*, cited above, Saatva specifically states that "[s]ustainability is at the heart of what we do at Saatva. We're committed to bringing you sleep products that are good for the environment (and your health) by using eco-friendly, nontoxic materials and maintaining sustainable manufacturing processes."

---

[7] *Green Initiatives*, Saatva, https://pages.saatva.com/green-initiatives (last visited May 20, 2025).
[8] *Id*.

22.     Saatva specifically represents that consumers can "[s]hop eco-friendly mattresses at Saatva", explaining that "[a]ll of our mattresses are made with materials that are eco-friendly and nontoxic, meaning they're good for the planet and your health." http://www.saatva.com/blog/saatva-supports-environment-earthday/.

22.     Defendant further states that "Saatva mattress foams, including the ones in our Contour5 memory foam mattress, are certified by CertiPUR-US, so that they're guaranteed to be free of toxic chemicals."

23.     These representations were explicitly directed at giving reasonable consumers who are environmentally conscious the misleading impression that all of the material elements of a Saatva mattress are made with environmentally safe, natural and non-toxic materials, and that it is worth paying a premium for those features.

24.     As far as its baby crib mattress, in its brochure, Saatva specifically represents that its "dual-sided baby mattress is built with safety", and that it is "handcrafted with natural, nontoxic, eco-friendly materials" providing parents with peace of mind because it is made from "natural materials for healthier sleep."[9]

25.     In its website, Saatva again promises that its baby mattress provides for "healthier sleep" and that its "handcrafted crib mattress is designed with the safety and unique sleep needs of babies and toddlers in mind."[10]

26.     Saatva promises that it "never use[s] fiberglass or toxic chemical flame retardants/barriers" and instead use[s] [a] plant-flame barrier." [11]

---

[9] https://www.saatva.com/mattresses/crib-mattress.
[10] *Id*.
[11] *Id*.

27.    Instead, Saatva represents that its crib mattress contains a "***natural*** thistle flame barrier, and NO fiberglass or ***toxic chemical sprays***"[12] and that its baby crib product is "made with at least 95% organic fiber, ***free of toxic chemicals***, colored with ***nontoxic*** dyes, and meet[s] strict social and ***environmental criteria***."[13]

28.    Saatva further represents that the crib mattress is made with eco-conscious materials, and that these mattresses have the CradletoCradle Certification, indicating that these mattresses "meet their [CradletoCradle] high standards for safety, circularity, and responsibility of    material    and    product    across    five    sustainability    categories." http://www.saatva.com/mattress/crib-mattress?.

24.    As Saatva explains on its blog portion of its website, a textile with a Cradle to Cradle Certification seal has to meet standards in five sustainability categories, including material health, material reuse, renewable energy and carbon management, water stewardship, and social fairness.  https://www.saatva.com/blog/mattress-certifications.

25.    These categories are obviously significant to those consumers who are environmentally conscious, and/or have health issues triggered by the existence of certain toxins and chemicals, and were made to entice and mislead consumers into purchasing and paying for a Saatva mattress because of its eco friendly, natural and non toxic materials, and sustainable processes.

26.    Saatva emphasizes its use of all "eco-friendly" materials in the baby crib mattress, including "natural latex", as shown in the website screenshot below:

---

[12] *Id*. (emphasis added)
[13] *What is* GOTS*?*, Saatva, https://saatvahelp.saatva.com/hc/en-us/articles/360043989234-What-is-GOTS (last visited May 20, 2025).

10

> **Eco-friendly materials**
>
> Every Saatva Crib Mattress features:
>
> • Cover made with organic cotton
>
> • Guardin™ botanical antimicrobial treatment
>
> • Cradle to Cradle®* GOLD certified natural latex
>
> • Recycled steel coils
>
> • GOTS®* certified organic New Zealand wool
>
> • Chemical-free flame barrier is OEKO-TEX® Standard 100 certified
>
> • GREENGUARD* Gold certified to help reduce indoor air pollution and your family's risk of daily chemical exposure to potentially harmful substances like volatile organic compounds (VOCs)
>
> *Cradle to Cradle Certified® is a registered trademark of Cradle to Cradle Products Innovation Institute
> GOTS® (Global Organic Textile Standard) is a registered trademark of Global Standard gGmbH
> GREENGUARD Gold is a trademark of UL LLC

27.    Both Saatva's adult and baby crib mattresses, however, contain materials that are not eco friendly or natural and in some cases, like its baby mattress, contain harmful toxins.

**Saatva's Adult and Baby Mattresses Contain Synthetic Materials and Forever Chemicals**

**Saatva's References to Certain Certifications are Misleading**

28.    Saatva's references to product certifications—particularly the CertiPUR-US® certification and Cradle to Cradle Certified® program—are misleading. While Saatva markets its mattresses as holding or meeting these standards, neither Saatva nor its crib mattress is listed as a certified manufacturer on the CradletoCradle website.

29.    Moreover, under the CertiPUR-US® Program Rules, even certified manufacturers and retailers are expressly prohibited from making certain claims in association with the certification.

30.    Specifically, the CertiPUR-US® website states that companies "cannot say the foam is 'eco-friendly,' 'non-toxic,' 'green,' 'safe,' or 'sustainable'"—precisely the language

11

Saatva uses to describe both its foams and its mattresses generally. https://certipur.us/for-manufacturers-retailers/program-rules/.

31.     This is because while these products may contain fewer harmful chemicals, "no polyfoam is entirely safe or non-toxic, nor can it be considered genuinely eco-friendly."[14]

32.     In any event, Saatva's extensive reference to its CertiPUR-US Certification is misleading.  CertiPUR foam is an initiative driven by the polyfoam manufacturers who have a vested interest in presenting a more eco-conscious image for their product.[15]

33.     In its blog, "Guide to Mattress Certifications", Saatva promotes the CertiPUR-US® certification but fails to disclose that the program is industry-founded and administered by the Polyurethane Foam Association. This omission gives a reasonable consumer the false impression that CertiPUR-US® is an independent, third-party certifier. Such a representation, without disclosure of its industry affiliation, violates FTC Green Guides, 16 C.F.R. § 260.6(e), which require disclosure of material connections between certifiers and marketers when they may influence consumer perception.

34.     As a result, Saatva's repeated reliance on the CertiPUR-US certification, especially when paired with marketing claims that its mattresses are eco-friendly, non-toxic, and safe, creates a misleading overall impression that its products are independently verified to meet strong environmental and health standards, when in fact they are not.

**Saatva's Adult Mattress Contains Synthetic Materials**

35.     Neither Saatva's website nor its printed brochures provide consumers with a clear breakdown of the chemical composition of its mattresses or discloses what proportion of the

---

[14]  https://*myessentia*.com/blogs/mattress-101/about-plant-based-memory-foam-mattresses?srsltid=AfmBOooGpcCpKDputmfGE1u6PeENRHCeMitOzU4KOAdfYKJHBg7Ady0z

[15] *Id*.

12

materials are petrochemical-based. In fact, a consumer typically is not informed of the chemical content of his mattress until it is delivered, when such information appears on the law label affixed to the mattress. Nonetheless, Saatva's marketing repeatedly emphasizes eco-friendly, nontoxic, and health-conscious messaging, which conveys to a reasonable consumer that its adult mattresses are largely free of petrochemicals and other synthetic substances that may harm the environment or human health

36.     Consequently, a reasonable consumer would be led to believe that the adult mattresses were made from natural, environmentally friendly materials, and that they did not contain petroleum based or synthetic materials, much less materials that actually harm the environment.

37.     It is only after a mattress is purchased and delivered—and the consumer has access to the mattress tag—that a reasonable consumer would discover that an adult Saatva mattress contains synthetic, petrochemical-based materials, including polyurethane foam, cotton-polyester blends, rayon fiber used as a flame retardant, and gel-infused viscoelastic foam, among other components. These materials are not clearly disclosed on Saatva's product pages, despite the company's marketing emphasis on eco-friendliness and safety.

38.     A reasonable consumer is unlikely to understand the technical nature of materials such as polyurethane foam, rayon fiber, or viscoelastic gel foam, and would thus assume that these components conform to Saatva's representations of being "eco-friendly" or "non-toxic." The average consumer would not anticipate that such materials may contradict those environmental or health claims.

39.     In actuality, these materials carry well-documented health and environmental concerns that conflict with Saatva's representations.

40.     For example, polyurethane foam is created through a chemical synthesis involving polyols and isocyanates—both of which are petrochemical-derived and environmentally harmful. According to *Current Progress in Research into Environmentally Friendly Rigid Polyurethane Foams* (PMC), isocyanates are known to cause a range of health problems, including respiratory issues, asthma, and irritation of the eyes, nose, throat, and skin. Some isocyanates, such as TDI, are also classified as potential human carcinogens.

41.     Polyurethane foam contains volatile organic compounds (VOCs) released by the foams that can irritate the respiratory tracts, and result in difficulty breathing and coughing.

42.     Although lower VOC foams, such as those allegedly used by Saatva, do emit fewer harmful compounds[16], there are "greener" more eco friendly alternatives to polyurethane, including cellulose insulation which is made from recycled paper, latex foam, and natural fiber—something that is not disclosed by Saatva.  In fact, Saatva's foams still contain chemicals.

43.     Further, polyurethane foam is neither sustainable nor readily recyclable due to the use of highly reactive and toxic isocyanates in its manufacturing process. According to industry and academic studies—including *How Sustainable Are Polyurethane Foams?*—approximately 30% of all polyurethane foam is sent to landfills. Polyurethane foam is not biodegradable, and its persistence poses a significant environmental burden. Only about one-third of polyurethane foam is recovered through recycling, which itself is complex and energy-intensive.

44.     The primary environmental "benefit" attributed to polyurethane foam is its durability—meaning it is replaced less often than other foams—not that it is biodegradable or safe to produce. Nonetheless, Saatva fails to disclose these material facts, instead conveying to the

---

[16] Is Polyurethane Foam Toxic? Understanding Its Impact on Health and Environment - NewTec.

reasonable consumer that its products are environmentally sound, when in fact they are made from materials with significant environmental and toxicological concerns.

45.    Cotton polyester presents another issue.  Polyester is a petroleum-derived, plastic-based synthetic fiber,[17] despite Saatva's promise to "substitute traditional petroleum-based chemicals."

46.    "Producing plastic-based fibers for textiles uses an estimated 342 million barrels of oil every year" and "the energy required to produce polyester…and the greenhouse gas emitted…make it a high-impact process."[18]

47.    Also,"[d]uring production, facilities producing polyester without treating wastewater have a high probability of causing environmental damage through the release of heavy metals, and toxic chemicals," plus, "[i]t has been estimated that around half a million tons of plastic microfibers are shed into the oceans annually during the washing of plastic-based textiles such as polyester." [19]

48.    A cotton polyester pad found in Saatva's mattress ticking or the fabric covering the mattress, is not "natural" nor "eco-friendly."

49.    Polyester products also tend to be contaminated with antimony,[20] a toxic heavy metal associated with eye, heart, lung, and liver problems.[21]

---

[17] *Polyester*, Council of Fashion Designers of America, https://cfda.com/resources/materials/detail/polyester (last visited May 20, 2025).
[18] *Id.*
[19] *Id.*
[20] Marc Biver, *et al.*, *Antimony release from polyester textiles by artificial sweat solutions: A call for a standardized procedure*, Regul. Toxicol. Pharmacol., 119 (2021), https://doi.org/10.1016/j.yrtph.2020.104824.
[21] *Antimony - ToxFAQs*, Agency for Toxic Substances and Disease Registry (Oct. 2019), https://www.atsdr.cdc.gov/toxfaqs/tfacts23.pdf.

50.     Rayon fiber is used as part of the flame retardant barrier in the mattress, and is a semi-synthetic.  Although it sourced from plant material, because of the regeneration process that requires many steps and chemicals, it is not classified as a natural fabric.

51.     Additionally, the chemical processing behind rayon production includes a "solvent" called "carbon disulfide," which is "a toxic chemical that is a known human reproductive hazard," "endanger[s] factory workers," and "pollute[s] the environment via air emissions and wastewater."[22] "The recovery of this solvent in most viscose factories is around 50%, which means that the other half goes into the environment."[23]

52.     The gel infused viscoelastic foam found in Saatva's mattresses are not green and generally involves chemical processes and significant energy for production which can contribute to environmental concerns.  It is not biodegradable.

53.     In sum, Saatva's adult mattresses incorporate a range of chemical-based, synthetic, and non-biodegradable materials. These include polyester, polyurethane, rayon, and synthetic foams—none of which can be accurately described as "natural," "non-toxic," or "ecofriendly." Saatva's marketing claims to the contrary are materially misleading and deceptive.

**Saatva's Baby Crib Mattress Contains Forever Chemicals**

54.     Saatva's representations about its baby crib mattress are also misleading and deceptive.

55.     Contrary to its marketing representations, Saatva's baby crib mattress is not "non-toxic," "safe," "natural," "eco-friendly," or "chemical-free". Independent testing has revealed that the mattress contains PFAS (per- and polyfluoroalkyl substances)—a class of synthetic "forever chemicals" associated with a wide range of adverse human health effects and environmental harm.

---

[22] *Id.*
[23] *Id.*

56.    In August 2024, Toxin Free USA and Beyond Pesticides, two environmental advocacy nonprofits, commissioned third-party PFAS testing on a sample of Saatva's baby crib mattress. The lab analysis revealed the presence of numerous PFAS chemicals, contradicting Saatva's advertising claims. A summary of the test results is included in the chart below

| PFAS Name | Amount (parts per billion ("ppb")) |
|---|---|
| 6:2 FTOH-2-Perfluorohexyl ethanol | 230 |
| Perfluoropentanoic acid (PFPeA) | 0.51 |
| 1H,1H,2H,2H-Perfluorooctane sulfonic acid (6:2 FTS) | 0.19 |
| Perfluorohexanoic acid (PFHxA) | 4 |
| Perfluorobutanoic acid (PFBA) | 1.6 |
| Perfluoroheptanoic acid (PFHpA) | 0.028 |
| Perfluoropropionic acid (PFPrA) | 0.49 |
| 6:2 FTCA | 0.077 |

57.    PFBA is listed as a proposed hazardous constituent under the Environmental Protection Agency's ("EPA") Resource Conservation and Recovery Act, meaning that this chemical has been shown in scientific studies to have toxic, carcinogenic, mutagenic, or teratogenic effects on humans or other life forms.[24]

58.    PFHxA (Perfluorohexanoic acid), a short-chain PFAS detected in Saatva's crib mattress, has been found in toxicological studies to cause or be associated with hepatic (liver), developmental, hematopoietic (blood-forming), and endocrine (hormonal) effects in animals and

---

[24] *Listing of Specific PFAS as Hazardous Constituents,* 89 Fed. Reg. 8606, 8606-21 (Feb. 8, 2024).

potentially in humans. Regulatory assessments by the U.S. EPA, Health Canada, and the European Chemicals Agency raise significant concern over PFHxA's safety profile. [25]

59.     6:2 FTOH-2-Perfluorohexyl ethanol is a short-chain fluorotelomer alcohol (FTOH) and a precursor to PFHxA and other PFAS compounds. It is considered more biologically active and, in some studies, more acutely toxic than PFHxA, due to its ability to penetrate cells and interfere with endocrine and liver functions. While both chemicals pose health and environmental risks, FTOHs may exhibit greater acute toxicity, whereas PFHxA is more environmentally persistent.[26]

60.     Perfluoropentanoic acid (PFPeA) is a short-chain PFAS compound that, while less studied than long-chain PFAS, raises health concerns due to its structural similarity to known toxicants like PFOA. The Environmental Working Group (EWG) identifies PFPeA as a contaminant of concern, citing its persistence and potential health effects typical of the PFAS class, including immune dysfunction, endocrine disruption, and developmental toxicity.[4] While direct causal links to cancer remain under investigation, PFPeA's presence in drinking water supplies and biological systems underscores its potential risk.[27]

61.     Both PFHpA (Perfluoroheptanoic Acid) and 6:2 FTCA (6:2 Fluorotelomer Carboxylic Acid) are synthetic PFAS compounds that have been shown to pose health and environmental risks. PFHpA is a short-chain PFCA associated with liver toxicity, endocrine disruption, and environmental persistence. 6:2 FTCA, a breakdown product of fluorotelomer

---

[25] U.S. Environmental Protection Agency, *IRIS Toxicological Review of Perfluorohexanoic Acid [PFHxA, CASRN 307-24-4] and Related Salts* (Apr. 2023),
https://cfpub.epa.gov/ncea/iris/iris_documents/documents/subst/0704_summary.pdf.
[26] Penelope A. Rice, et al., *Comparative Analysis of the Toxicological Databases for 6:2 Fluorotelomer Alcohol (6:2 FTOH) and Perfluorohexanoic Acid (PFHxA)*, 138 Food and Chemical Toxicology 111210 (Apr. 2020), https://www.sciencedirect.com/science/article/abs/pii/S0278691520300983.
[27] Perfluoropentanoic Acid (PFPeA), Environmental Working Group,
https://www.ewg.org/tapwater/contaminant.php?contamcode=E208 (last visited May 20, 2025).

alcohols, has demonstrated toxicological effects in laboratory studies, including developmental toxicity, cytotoxicity, and bioaccumulation, and is similarly resistant to degradation in the environment.[28]

62.    Additional testing also confirmed that the Product contains 949 parts per million of Total Organic Fluorine, which for certain states, is a sign of "intentionally added" PFAS in a Product.[29]

**PFAS Are Toxic, Unsafe, and Unsustainable Chemicals.**

63.    PFAS are known as "forever chemicals" because their carbon-fluorine bonds are extremely strong and are not appreciably degraded under environmental conditions. The continued use of PFAS is, by the nature of these chemicals, unsustainable and environmentally unfriendly, because it will necessarily lead to a greater concentration of PFAS in the environment.[30]

64.    The PFAS family of chemicals was accidentally discovered in 1938 by a scientist working at E.I. du Pont de Nemours and Company ("DuPont"). In the decades following that discovery, DuPont and The 3M Company ("3M") became the primary manufacturers of PFAS.

65.    Internal company records and later disclosures have revealed that DuPont, 3M, and other PFAS manufacturers knew for decades that these substances are highly persistent,

---

[28] *See Perfluoroheptanoic acid (PFHpA)*, Vt. Dept. of Health (Mar. 2023),
https://www.healthvermont.gov/sites/default/files/document/env-cdp-375-85-9-pfhpa.pdf;  Guohui Shi, et al., *6:2 Fluorotelomer Carboxylic Acid (6:2 FTCA) Exposure Induces Developmental Toxicity and Inhibits the Formation of Erythrocytes During Zebrafish Embryogenesis*, 190 Aquatic Toxicology 53-61 (Sept. 2017), https://doi.org/10.1016/j.aquatox.2017.06.023.
[29] Cal. Health & Safety Code § 109000 (a)(3)(B) ("The presence of PFAS in a product or product component [is detected] at or above 100 parts per million, as measured in total organic fluorine.").
[30] Zhanyun Wang, *et al.*, *A Never-Ending Story of Per- and Polyfluoroalkyl Substances (PFASs)?*, 51 Env't Sci. Technol. 2508, 2508 (Feb. 22, 2017), https://doi.org/10.1021/acs.est.6b04806.

bioaccumulate in the blood, and pose serious health and environmental risks. Nonetheless, this information was largely withheld from regulators and the public for years.[31]

66.    Despite the previous attempts to keep this information from the public, DuPont and other manufacturers have themselves now openly stated in litigation documents that the PFAS family of chemicals as a whole, not just specific types, are "hazardous substances."[32]

67.    The earliest PFAS used in consumer and industrial applications are known as "long-chain" PFAS, including PFOA, PFOS, and PFNA. These chemicals are highly bioaccumulative and persistent. Due to mounting evidence of their toxicity, long-chain PFAS have been banned in the European Union and voluntarily phased out by major U.S. manufacturers, largely due to their severe health risks.

68.    Long-chain PFAS have been "banned in the European Union and phased out by major U.S. manufacturers," largely due to their health risks.[33]

69.    As a result of widespread concern regarding the environmental and health impacts of long-chain PFAS and greater regulation of these substances, many manufacturers have switched to using "short-chain" PFAS, also known as "GenX chemicals."

70.    The 6:2 FTOH found in Saatva's baby crib mattress, for instance, is a shortchain PFAS.[34]

71.    Although short-chain PFAS were once thought to be a safer alternative to longchain PFAS, research indicates that the human health risks of short-chain PFAS have been gravely

---

[31] *See, e.g.*, Sharon Lerner, *How 3M Executives Convinced a Scientist the Forever Chemicals She Found in Human Blood Were Safe*, Pro Publica (May 20, 2024), https://www.propublica.org/article/3m-forever-chemicals-pfaspfos-inside-story.

[32] *N.J. Dept. of Env't. Protection v. E. I. duPont de Nemours and Co.*, 2:19-cv-14758, ECF No. 118 at 12 (D.N.J. March 30, 2021).

[33] Erika Schreder, et al., *Toxic Convenience: The hidden costs of forever chemicals in stain- and waterresistant products*, Toxic-Free Future (Jan. 2022), https://toxicfreefuture.org/wp-content/uploads/2022/08/toxicconvenience.pdf.

[34] Penelope Rice et al., *supra* note 26.

underestimated. [35] As an example of how unsafe these newer PFAS are, EPA regulations concerning GenX Chemicals in drinking water are set at a Maximum Contaminant Level of 10 parts per ***trillion***, underscoring the agency's recognition of their potential danger.

72.     There are numerous reasons why PFAS chemicals—including the specific compounds identified above—are toxic, unsafe, and environmentally unsustainable. These substances are associated with a wide range of adverse health effects, including liver toxicity, developmental disruption, immune suppression, and endocrine interference. Their extreme persistence in the environment, ability to bioaccumulate in humans and wildlife, and resistance to natural degradation processes render them inherently unsustainable for continued use.

73.     For example, materials containing PFAS degrade over time, releasing the chemicals into the air, household dust, and laundry water, all of which enter the environment and potentially, drinking water. PFAS also enter the environment when products containing them are disposed of in landfills.[36]

74.     Humans are also exposed to PFAS when they ingest household dust. The risk of such exposure is greater for infants and young children, who spend more time on the floor and tend to put things in their mouths.[37]

75.     Exposures may also occur through inhalation of PFAS in the air and through skin absorption from direct contact with PFAS materials, such as bedding.[38]

---

[35] *See, e.g.*, David Andrews, *FDA Studies: 'Short-chain' PFAS Chemicals More Toxic Than Previously Thought*, Env'tal Working Grp. (Mar. 9, 2020), https://www.ewg.org/news-insights/news/fda-studies-short-chainpfas-chemicals-more-toxic-previously-thought.

[36] Schreder, et al., *supra* note 33, at 5-6.

[37] *See* Rice, *supra* note 26, at 2.

[38] Schreder, et al., *supra* note 33, at 5; *see also* Oddný Ragnarsdótti, et al., *Dermal Bioavailability of Perfluoroalkyl Substances Using in Vitro 3D Human Skin Equivalent Models*, 188 Env't Int'l 108772 (June 2024) ("Based on the data presented in this study, dermal exposure could be a significant source of exposure for some PFAS, especially the shorter-chain PFAS. Thus, the dermal route should not be dismissed as a possible route of human exposure to PFAS.").

76.    Children are disproportionately vulnerable to the harmful effects of PFAS exposure. Due to their developing physiological systems, higher intake-to-body-weight ratios, and longer potential exposure durations, children face an increased risk of immune suppression, endocrine disruption, and developmental toxicity from PFAS compared to adults.[39]

77.    On the regulatory front, the EPA currently advises the public about the health threats presented by PFAS as a whole family:

> Peer-reviewed scientific studies have shown that exposure to certain levels of PFAS may lead to:
>
> • Reproductive effects such as decreased fertility or increased high blood pressure in pregnant women.
>
> • Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.
>
> • Increased risk of some cancers, including prostate, kidney, and testicular cancers.
>
> • Reduced ability of the body's immune system to fight infections, including reduced vaccine response.
>
> • Interference with the body's natural hormones.
>
> • Increased cholesterol levels and/or risk of obesity.[40]

78.    The EPA advises that "[b]ecause children are still developing, they may be more sensitive to the harmful effects of chemicals such as PFAS."[41]

---

[39] Alan D. Woolf, et al., *Report outlines health effects of PFAS chemicals in children, provides recommendations for testing*, AAP News (Sept. 13, 2022), https://bit.ly/3h38Hem.

[40] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, EPA, https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Aug. 15, 2024).

[39] *Id*.

[41] *Id*.

79.    Also, because "PFAS can often be found together in mixtures, and research shows these mixtures may have combined health impacts," the EPA has also set "a limit for any mixture of two or more of the following PFAS: PFNA, PFHxS, PFBS, and 'GenX Chemicals.'"[42]

80.    Given the well-documented health harms associated with PFAS exposure—including cancer, developmental toxicity, immune dysfunction, and endocrine disruption—PFAS are appropriately classified as toxic and unsafe. Moreover, their chemical persistence and inability to degrade under natural conditions render them environmentally unsustainable.

81.    Because the product contains PFAS, a class of synthetic industrial chemicals, Saatva's claim that its mattress is "chemical-free" is factually false and materially misleading.

82.    As PFAS are man-made, toxic, and environmentally persistent, their presence renders Saatva's additional claims that its mattresses are "natural," "non-toxic," "safe," and "eco-friendly" deceptive under consumer protection laws.

**Plaintiff and Class Members Were Damaged by Saatva's Misrepresentations and Deception**

83.    Saatva's advertisements were false, misleading, and designed to induce Plaintiff and Class members to purchase its mattresses. As a result of these misrepresentations—particularly those concerning the mattresses' purported eco-friendly, safe, non-toxic, and natural qualities—Plaintiff and Class members were deceived into purchasing Saatva mattresses, and did so at prices higher than they would have paid had the true nature of the products been disclosed.

84.    Plaintiff and Class members reasonably relied on Saatva's material misrepresentations and omissions, believing they were purchasing mattresses that were genuinely eco-friendly, safe, non-toxic, and natural, and thereby suffered injury as a result of that reliance.

---

[42] *Biden-Harris Administration Finalizes First-Ever National Drinking Water Standard to Protect 100M People from PFAS Pollution,* EPA (April 10, 2024).

85.    Plaintiff and Class members paid a price premium based on Saatva's claims, which were central to their purchasing decisions and formed a substantial basis of the bargain.

86.    Given that Saatva manufactures its own mattresses, it knew or should have known that its marketing claims concerning the mattresses' environmental safety and material composition were false, misleading, and grossly exaggerated. Saatva also knew or should have known that its representations about the natural, safe, and non-toxic nature of its mattresses and foams were inaccurate and, in some cases, violated the advertising guidelines of the CertiPUR-US® certification program.

87.    Saatva further knew or should have known that certain certifications it promoted to bolster its eco-friendly marketing claims were misleading. In some instances, Saatva did not hold a valid certification from the referenced entities or materially overstated the scope or relevance of those certifications.

88.    Defendant's actions—including its false and deceptive advertising—were directed at consumers and constituted implied and express warranties that the mattresses purchased conformed to Saatva's representations. These representations became part of the basis of the bargain and formed part of the express contractual agreement between Saatva and Plaintiff and Class members.

## CLASS ALLEGATIONS

89.    Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all consumers who purchased a Saatva adult or baby crib mattress within the United States during the Relevant Period.

90.    Plaintiff further brings this action on behalf of a subclass of all persons who are citizens of New York who purchased a Saatva adult or crib mattress in New York during the Relevant Period.

91.    Excluded from the Class are (1) Defendant, any parent, entity or division in which Defendant has a controlling interest, and Defendant's legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

<u>Numerosity</u>

92.    The members of the Class are so numerous that joinder of all members is impracticable. The Class is made up of thousands of members. The precise number of Class members can only be ascertained through discovery, which includes Defendant's sales records. The disposition of Class members' claims through a class action will benefit the parties and the Court.

<u>Common Questions of Law and Fact</u>

93.    There is a well defined community of interests in the questions of law and fact affecting Plaintiff and Class members.

94.    There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)    Whether Defendant is responsible for the marketing and advertising at issue;

(b)    Whether the marketing of Saatva's adult and baby crib mattress was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(c)    Whether the sale of Saatva's adult and baby crib mattress was unlawful, unfair, misleading, false, deceptive, fraudulent, and/or unlawful, and at prices higher than they would have been had those misrepresentations not been made;

(d)    Whether Defendant violated New York GBL §349;

(e)    Whether Defendant violated New York GBL §350;

(f)    Whether Defendant breached an express warranty formed with Plaintiff and Class and/or Subclass;

(g)    Whether Defendant breached an implied warranty formed with Plaintiff and Class members;

(h)     Whether Defendant was unjustly enriched by its conduct; and

(i)     Whether Defendant's conduct as set forth above injured Plaintiffs and Class members.

Typicality

95.    Plaintiff's claims and defenses are typical of the claims and defenses of the Class because Plaintiff and all Class members all purchased a Saatva adult and/or baby crib mattress based upon the same course of deceptive statements and paid an additional price for these mattresses based upon Saatva's deceptive statements.  Plaintiff and each Class member purchased a Saatva adult or baby crib mattress that failed to conform to Defendant's false and misleading statements, including that the mattresses were eco-friendly, natural, safe, and non-toxic, and they had been certified by certain sustainability organizations.

Adequacy of Representation

96.    Plaintiff will fairly and adequately assert and protect the interests of the Class as:

(a)     Plaintiff has retained counsel who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

(b)     Plaintiff has no conflicts of interest that will interfere with the maintenance of this class action.

Predominance

97.    With respect to the Class, or in the alternative, the Subclass, questions common to the Class predominate over those that only affect individual owners. This action involves the same set of deceptive statements and course of false advertising. Because the purchased mattresses lack the features advertised and failed to conform to the statements made, including failing to be eco-friendly, and contained synthetic chemicals that are not biodegradable or environmentally sound, the value of those mattresses have been reduced accordingly.  Liability will be primarily predicated up on the jury's evaluation of Defendant's representation and/or advertisements

26

regarding the eco-friendly, natural, nontoxic and safe nature of the mattresses, the materiality of those features, and the reduced value of those products given that they lack those features.

Superiority

98.    A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

(c)    The common questions of law and fact set forth above predominate over any questions affecting only individual Class members;

(d)    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems. There are no unusual factual issues that would create manageability problems.

(e)    Prosecution of separate actions by individual Class members would create the risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

(f)    The claims of individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can as a practical matter, recover, and

(g)    A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

**COUNT I**
**(Deceptive Trade Practices)**
**(Violation of General Business Law §349; Deceptive Acts and Practices)**
**(On behalf of the Class or alternatively, the Subclass)**

99.    Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

27

100.    Plaintiff asserts this cause of action on behalf of members of the Class or alternatively, the Subclass.

101.    Defendant's practices, acts, policies and courses of conduct, including its dissemination of a series of false and misleading statements concerning its adult and baby crib mattresses, at a time when its mattresses failed to conform to the statements made, were aimed at consumers, were consumer oriented, and were intended to induce, and did induce Plaintiff and members of the Class and/or Subclass to purchase Saatva's mattresses during the Relevant Period.

102.    Defendant's marketing was misleading by including affirmative misrepresentations that its mattresses were eco-friendly, natural, safe, and non-toxic, and by knowingly omitting that they contained synthetic materials, forever chemicals, and other materials that are not environmentally safe, and some of which are toxic.

103.    In other words, in order to induce consumers, such as Plaintiff and members of the Class and/or Subclass to purchase their mattresses during the Relevant Period at the prices at which they were sold, Defendant engaged in greenwashing, making statements to mislead consumers into believing that their mattresses were far more environmentally friendly, safe, non-toxic and natural, than they actually were.

104.    Defendant knowingly and deceptively misrepresented to Plaintiff and the Class and/or Subclass members at the time of purchase that Saatva's adult and baby crib mattresses were eco-friendly, natural, safe and non-toxic, and that Saatva has obtained certain certifications to support those claims, when Saatva knew or should have known that its mattresses contained synthetic materials that therefore are not entirely environmentally friendly, natural, non- toxic and safe, and that it failed to have certain certifications and/or that its statements particularly with regard to the foam used, violated the standards set forth by CertiPUR-US.

105.    Defendant's practices, acts, policies, and course of conduct are actionable in that:

(a) Defendant, actively, knowingly and deceptively misrepresented to Plaintiff and the Class and/or Sublcass members at the time of purchase that their mattresses were eco friendly, safe, non toxic and natural, and exaggerated the environmental benefits of its products;

(b) Defendant failed to disclose the chemical composition of their mattresses until after the mattress was purchased, despite the fact that Defendant was aware that the mattresses contained these chemicals;

(c) Defendant's actions, misrepresentations, advertisements and/or omissions caused Plaintiff and the Class and/or Subclass members to expend additional sums of money to purchase mattresses that they believed to be eco-friendly, safe, natural and non-toxic, thereby causing them damage.

(d) Defendant's marketing, advertising, and promotion of their mattresses, was deceptive because it failed to reveal that the mattresses contained synthetic materials, and forever chemicals, and the fact that these chemicals are not safe, non-toxic or environmentally friendly, exaggerated the eco-friendly nature of the materials used, including that they were good for the environment and consumer health, and failed to disclose the truth regarding certain certifications that Saatva touted.

106.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendant has by the use of false and deceptive statements, and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of its mattresses.

107.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant misrepresented and/or knowingly and intentionally omitted material facts.

108.    Plaintiff and members of the public were deceived by Defendant's affirmative misrepresentations and failure to properly disclose the material fact that its mattress contained synthetic, and toxic materials, and its exaggerated statements regarding the benefits to the environment and health stemming from its products, as well as its misrepresentations concerning its certifications.

109.    Such acts by Defendant are and were deceptive acts or practices that are and/or were likely to mislead a reasonable consumer purchasing a Saatva adult or baby crib mattress for the reasons stated above. Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of Saatva's adult and baby crib mattresses was a consumer oriented act and thereby falls under the New York consumer fraud statute, General Business Law §349.

110.    As a direct and proximate result of these deceptive acts and omissions, Plaintiff and Class and Subclass members have suffered economic injuries, including overpayment, loss of value, and loss of the benefit of the bargain.

111.    Plaintiff and the Class are entitled to recover actual and/or statutory and/or punitive damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

112.    Moreover, the adult and baby crib mattresses are of lesser value than if they had been eco-friendly, safe, non-toxic and natural, and Plaintiff and Class and/or Subclass members have lost the benefit of their bargain.

113.    As a result, Plaintiff and Class and/or Subclass members seek restitution and disgorgement of revenues that Saatva received as a result of selling its mattress based upon deceptive and false advertising.  Plaintiff is informed and believes that the amount of restitution is unknown at this time but will seek relief to amend this Complaint at the time of trial, when the same has been ascertained.

114.    In addition, Plaintiff seeks punitive damages, statutory damages and reasonable attorneys' fees.

## COUNT II
**(Deceptive Trade Practices)**
**(Violation of General Business Law §350; Deceptive Acts and Practices)**
**(On behalf of the Class or alternatively, the Subclass)**

115.    Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

116.    Plaintiff asserts this cause of action on behalf of himself and members of the Class and/or Subclass.

117.    Defendant engaged in deceptive and materially misleading advertising and promotional practices by marketing its adult and baby crib mattresses as eco-friendly, non-toxic, natural, safe, and beneficial to health and the environment, when in fact they contained synthetic materials, including PFAS and other toxic substances, that are neither safe nor environmentally sustainable.

118.    These advertisements were broadly disseminated to consumers, were materially misleading, and were likely to mislead a reasonable consumer acting under ordinary circumstances. The sale and distribution of these mattresses in New York was a consumer oriented act, and thereby falls under the New York consumer fraud statute, General Business law §350.

119.    Defendant's conduct further constitutes false advertising within the meaning of New York General Business Law § 350.

120.    As a direct and proximate result of Defendant's deceptive advertising, Plaintiff and Class members were misled into purchasing mattresses they would not have purchased—or would have paid less for—had the true nature of the products been disclosed.

121.    Plaintiff and Class members have suffered economic injury, including overpayment, loss of value, and loss of the benefit of the bargain, and are entitled to recover actual damages, statutory damages, treble damages, and/or punitive damages to the extent permitted by law.

122.    Plaintiff and the Class also seeks restitution and/or disgorgement of revenues obtained through Defendant's false advertising practices. While the precise amount is presently unknown, Plaintiff will seek leave to amend or prove the amount at trial.

123.    Plaintiff further seeks reasonable attorneys' fees, costs of this suit, and any additional relief the Court deems just and proper, including injunctive relief if appropriate.

### COUNT III
**Breach of Express Warranty**
**(Violation of New York Uniform Commercial Code, §2-313)**
**(on Behalf of Plaintiffs and All Class Members, alternatively the Subclass)**

124.    Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

125.    Plaintiff brings this claim individually and on behalf of all Class Members, or alternatively, on behalf of the Subclass pursuant to N.Y.U.C.C. §2-313(1)(b).

126.    Defendant made uniform affirmative descriptions of its adult and baby crib mattresses in product packaging, online marketing, and printed brochures. These descriptions included specific claims that the mattresses were:

- Eco-friendly and made through sustainable processes;

- Non-toxic;

- Safe for consumers and the environment;

- Natural, and free from synthetic or petrochemical-derived materials, including forever chemicals such as PFAS; and that

- They were good for the environmental and for consumers' health.

127.  Defendant also represented that its mattresses complied with the standards of CertiPUR-US and Cradle to Cradle, and that both the foam components and overall manufacturing processes met those respective certifications' requirements.

128.  These representations constituted affirmative descriptions that were made part of the basis of the bargain between Plaintiff (and Class/Subclass members) and Defendant. Plaintiff and Class members relied upon these representations in deciding to purchase Saatva's mattresses.

129.  Defendant breached its express warranties by selling mattresses that did not conform to these descriptions. Specifically, the products contained synthetic, petroleum-based foams, and toxic substances including PFASs, which are not biodegradable, not natural, and harmful to human health and the environment. Moreover, Defendant failed to meet the standards of the certifications it touted.

130.  As a direct and proximate result of this breach, Plaintiff and Class/Subclass members suffered economic injury, including overpayment, diminished product value, and loss of the benefit of their bargain.

131.  Plaintiff and the Class/Subclass seek compensatory damages in an amount to be determined at trial, and, to the extent permitted by law, punitive damages based on Defendant's knowing and intentional misrepresentations concerning the nature of its products.

### COUNT IV
### Breach of Implied Warranty
### (on Behalf of Plaintiff and the Class, or Alternatively, the Subclass)

132.  Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

133. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and/or Subclass against Defendant.

134. The claims of Plaintiff and the Class and/or Subclass are governed by New York law, including Article 2 of the New York Uniform Commercial Code.

135. Defendant is a merchant regularly engaged in the business of manufacturing, marketing, distributing, and selling mattresses, and at all relevant times held itself out as having specialized knowledge and skill with respect to such goods.

136. Plaintiff and Class members purchased Defendant's mattresses as end-use consumers, for the ordinary and foreseeable use of such products—i.e., to obtain a mattress that was safe, non-toxic, eco-friendly, and suitable for regular household use. Alternatively, Plaintiff and Class members purchased the mattresses for the specific purpose of obtaining a product that conformed to Defendant's representations, including that the mattresses were "natural," "non-toxic," "chemical-free," and "eco-friendly," and good for the environment and their health.

137. Defendant, as the manufacturer and seller, knew or had reason to know of the particular purpose for which Plaintiff and the Class intended to use the mattresses and that they were relying on Defendant's expertise and representations in making their purchases.

138. Defendant breached the implied warranty of merchantability by selling mattresses that contained toxic, synthetic, and environmentally harmful substances, including PFAS and petrochemical-derived foams, which rendered the products not fit for their ordinary purpose and contrary to consumers' reasonable expectations.

139. Defendant also breached the implied warranty of fitness for a particular purpose, as the mattresses failed to conform to the qualities expressly and impliedly promised in Defendant's advertising and product representations.

140.    As a direct and proximate result of Defendant's breaches, Plaintiff and Class members suffered economic injury, including overpayment and the loss of the benefit of the bargain, and would not have purchased the mattresses—or would have paid significantly less—had the true nature of the products been disclosed.

## COUNT V
### Unjust Enrichment
### (on Behalf of Plaintiffs and the Class)

141.    Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein.

142.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class.

143.    To the extent required by law, this cause of action is pled in the alternative to Plaintiff's legal claims, pursuant to Fed. R. Civ. P. 8(d)(2).

144.    Plaintiff and Class members conferred a direct benefit on Defendant by purchasing Saatva's mattresses and paying a premium based on Defendant's representations.

145.    Defendant knowingly accepted and retained the revenues derived from these purchases, despite the fact that the products did not conform to Defendant's representations regarding safety, sustainability, or eco-friendliness.

146.    Retention of these benefits is unjust and inequitable, as Defendant's misrepresentations induced Plaintiff and Class members to purchase mattresses that were not as advertised—specifically, not primarily made with safe, sustainable, or non-toxic materials.

147.    Plaintiff and Class members were thereby injured, including through overpayment and loss of the benefit of the bargain.

148.    Defendant's retention of these non-gratuitous benefits violates principles of justice, equity, and good conscience, and thus constitutes unjust enrichment in an amount to be determined at trial.

149.    Plaintiff and Class members lack an adequate remedy at law to fully address the harm caused by Defendant's wrongful conduct

## .JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in their favor and in favor of the Class as follows:

A.      An order certifying the proposed Class and Subclass; appointing Plaintiff as the Class and Subclass representative, and appointing Plaintiff's undersigned counsel as counsel for the Class and Subclass;

B.      An order declaring that Defendant's conduct violates the statutes referenced herein;

D.      An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E.      Injunctive relief;

F.      An order for prejudgment interest on all amounts awarded;

G.      An order awarding Plaintiffs and the other Class and Subclass members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.      Any further relief that the Court may deem appropriate.

DATED: May 22, 2025                    Respectfully submitted,

                                       */s/ Melissa R. Emert*
                                       **KANTROWITZ, GOLDHAMER**
                                       **&GRAIFMAN, P.C.**
                                       Melissa R. Emert
                                       Gary S. Graifman
                                       135 Chestnut Ridge Road
                                       Suite 200
                                       Montvale, NJ 07645
                                       Telephone : 201-391-7000
                                       Facsimile : 201-307-1086
                                       memert@kgglaw.com
                                       ggraifman@kgglaw.com

                                       Lynda J. Grant
                                       **THEGRANTLAWFIRM, PLLC**
                                       521 Fifth Avenue, 17th Floor
                                       New York, NY 10175
                                       Tel: 212-292-4441
                                       Fax: 212-292-4442
                                       lgrant@grantfirm.com

                                       *Attorneys for Plaintiff*